11 CIV 0988

Christopher Dillon
Keith W. Heard
Burke & Parsons
100 Park Avenue
New York NY 10017-5533
(212) 354-3800

JUDGE RAKOFF




UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ARCHER DANIELS MIDLAND COMPANY and ADM RICE, INC.,**<br>**Plaintiffs,**<br>**v.**<br>**JPMORGAN CHASE BANK, N.A.,**<br>**Defendant.** | **VERIFIED COMPLAINT**<br>**ECF Case** |

Plaintiffs, Archer Daniels Midland Company and ADM Rice, Inc., by their attorneys, Burke & Parsons, as and for their Verified Complaint herein, allege upon information and belief as follows:

1. Plaintiff Archer Daniels Midland Company ("ADM") is an agricultural conglomerate with an office and principal place of business at 4666 Faries Parkway in Decatur, Illinois 62526. Archer Daniels Midland Company is a corporation organized and existing under and by virtue of the laws of the state of Delaware.

2. Plaintiff ADM Rice, Inc. ("ADM Rice") is a corporation organized and existing under and by virtue of the laws of the state of Delaware, with an office and principal place of business at Suite 605, 660 White Plains Road, Tarrytown, NY 10591. ADM Rice is a wholly-owned subsidiary of ADM.

3. Defendant JPMorgan Chase Bank, N.A. ("JPMC") is a national banking association with its main office in Columbus, Ohio, as designated in its articles of association. Although JPMC has offices in New York, under 28 U.S.C. § 1348, it is deemed to be a citizen of the state in which it is "located," which is Ohio. *See, Excelsior Funds, Inc. v. JPMorgan Chase Bank, N.A.*, 470 F.Supp.2d 312 (S.D.N.Y. 2006).

4. This Honorable Court has subject matter jurisdiction over this action on the basis of diversity of citizenship, 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue lies in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district. In addition, the forum selection clause in JPMC's form Application and Agreement for Standby Letter of Credit dated August 26, 2010 requires that any "legal action or proceeding arising out of or in connection with this Agreement" must be brought in "a state or federal court located in the Borough of Manhattan, City of New York, State of New York."

**The Letter of Credit and the Underlying Transaction**

6. ADM Rice buys and sells rice at various locations around the world and has sold rice to the Ministry of Trade/Grain Board of Iraq ("GBI") since 2005.

7. On August 25, 2010, the GBI advised ADM Rice that the GBI had accepted an offer by ADM Rice to sell approximately 120,000 metric tons of "American rice" to the GBI on the basis of CIF liner out, Umm Qasr, Iraq, terms, at a cost of $549.75 per metric ton. The contract award document required that ADM Rice arrange a performance bond in the amount of 10% of the contract value through a bank in Iraq.

8. On August 26, 2010, ADM, as Applicant/Obligor, for and on behalf of ADM Rice, as the Account Party, applied for issuance by defendant JPMC of a letter of credit in the amount of $6,926,850.00 so that a Performance Bond could be issued in favor of the GBI in connection with contract no. MOT/GB/R5/4/2010. Attached to the application was the wording for the Performance Bond. That language included the following:

> All claims made under this performance bond must be accompanied by an SGS original laboratory report specifically certifying that the quality of the purchased commodity does not meet the contractual specifications.

Thus, it is clear the Performance Bond was being posted to cover potential quality claims.

9. On August 27, 2010, JPMC issued its irrevocable standby letter of credit no. TFTS-868801 to the Trade Bank of Iraq ("TBI") in the amount of $6,926,850.00. The letter of credit requested the TBI to issue a performance bond in the same amount for the account of ADM Rice in favor of the GBI. The actual terms that were to appear in the Performance Bond – including

the requirement that all claims thereunder must be accompanied by an adverse SGS quality report – were set forth in the letter of credit itself.

10. The letter of credit provided that the amount thereof would be:

> AVAILABLE AGAINST YOUR [i.e., the TBI's] AUTHENTICATED SWIFT THAT YOU HAVE DULY ISSUED YOUR PERFORMANCE BOND AS REQUESTED BY OURSELVES AND THAT YOU HAVE RECEIVED **A CLAIM IN ACCORDANCE WITH THE TERMS OF THE PERFORMANCE BOND** [emphasis added].

11. The letter of credit provided further as follows:

> WE UNDERTAKE TO PAY TO THE DEVELOPMENT FUND FOR IRAQ, FOR ACCOUNT OF TRADE BANK OF. IRAQ ON YOUR FIRST AUTHENTICATED SWIFT DEMAND, ANY AMOUNT THAT YOU MAY CLAIM NOT EXCEEDING THE TOTAL VALUE OF THE SAID BOND **PROVIDED THAT SUCH DEMAND IS IN ACCORDANCE WITH THE PERFORMANCE BOND.** [Emphasis added.]

A copy of the letter of credit is annexed as Exhibit A to this Verified Complaint.

**The Performance Bond**

12. On or about September 2, 2010, the TBI issued a Performance Guarantee/ Performance Bond, no. IGT1011517DRE, in the amount of $6,926,850.00 to the GBI in connection with contract no. MOT/GB/R5/4/2010. The Performance Bond provides in part as follows:

> All claims made under this performance bond must be accompanied by an SGS original laboratory report specifically certifying that the quality of the purchased commodity does not meet the contractual specifications.
>
> We hereby guarantee to pay to The Development Fund for Iraq, for your account , such amount as you may claim from us hereunder upon presentation of your first written demand at our counters purporting to be signed by your authorised signatory specifying the amount claimed hereunder, certifying that the Customer has failed to fulfill their obligations

> to you and a detailed explanation of such failure to comply with the contract, and accompanied by the SGS original laboratory report as stated above.

A copy of the Performance Bond is annexed as Exhibit B to this Verified Complaint.

13. A copy of the Performance Bond, signed on behalf of the TBI, was sent to JPMC, who forwarded same to ADM on September 10, 2010. The terms of the Performance Bond, as issued, match what was contained in ADM's application for the letter of credit and in the letter of credit itself. Thus, by the terms of the Performance Bond, a claim thereunder "must be accompanied by an SGS original laboratory report specifically certifying that the quality of the purchased commodity does not meet the contractual specifications."

**Subsequent Developments**

14. The sales transaction between GBI and ADM Rice was memorialized in contract no. MOT/GB/R5/4/2010, dated September 6, 2010.

15. Consistent with the terms of the contract award document (see paragraph 7 above), paragraph 13 of the sales contract required ADM Rice, as the seller, to arrange a performance bond in the amount of 10% of the contract value through a bank in Iraq.

16. In accordance with its obligations under sales contract no. MOT/GB/R5/4/2010, ADM Rice has shipped rice from the United States to Iraq on three vessels. With respect to quality, all of the rice shipped on board these vessels was approved by SGS and the U.S. Department of Agriculture.

17. The first of the three vessels, the M/V CAPTAIN HARRY, has recently completed unloading its cargo of approximately 40,000 metric tons of rice at Umm Qasr, Iraq. The other two vessels are still en route.

18. On Friday, February 11, 2011, Andrew Kosik of JPMC sent an email to other employees in the bank indicating that, in his view, JPMC had "received an in compliance drawing" under the standby letter of credit in favor of TBI and that, because JPMC intended to honor the request, JPMC should obtain reimbursement from ADM.

19. On that same afternoon of Friday, February 11, 2011, Mr. Bonnesen sent a letter by email to the Global Trade Services unit at JPMC in which ADM Rice warned that it considered "a demand for payment under the Performance Bond . . . wrongful and not in compliance with the terms of the Performance Bond." The letter then proceeded to explain that a demand under the Performance Bond would be wrongful "because only the first shipment has been delivered, and because, contrary to the explicit requirements of the Performance Bond, there cannot be 'an SGS original laboratory report specifically certifying that the quality of the purchased commodity does not meet the contractual specifications'."

20. ADM Rice has corresponded with the Iraqi Branch Manager for SGS (previously known as "Société Générale de Surveillance"), who confirmed by email on February 12, 2011 that SGS has not issued a laboratory report in relation to the cargo certifying that the quality of the rice did not meet the contractual specifications.

21. A copy of the February 11th letter from ADM Rice to JPMC described in paragraph 19 was also sent by overnight courier service to the office of JPMC Global Trade Services in Chicago, whose address appears on the standby letter of credit. Included with that letter was a copy of the email exchange, described in paragraph 20 above, confirming that SGS has not issued "a laboratory report in relation to this cargo certifying that the quality of the purchased rice does not meet the contractual specifications." This information was also transmitted by overnight courier service to JPMC in New York.

22. Since SGS has not issued the report necessary to accompany a claim under the Performance Bond, no legitimate drawing under the terms of the Performance Bond has occurred. Any such claim or statement by TBI is fraudulent and defective and cannot properly support a drawdown under the standby letter of credit.

**Claim for Injunctive Relief**

23. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 24 of this Verified Complaint with the same force and effect as if herein repeated and set forth at length.

24. This is an action for injunctive relief pursuant to § 5-109 of the Uniform Commercial Code, a New York state statute.

25. TBI is the beneficiary of the standby letter of credit issued by JPMC. TBI is a bank in Iraq that, on information and belief, does not have any assets in this jurisdiction to satisfy any

potential money judgment if it is ultimately determined that it received funds under the letter of credit to which it was not entitled.

26. GBI is a governmental entity in Iraq. On information and belief, GBI does not have any assets in this jurisdiction to satisfy any potential money judgment if it is ultimately determined that it received funds under the Performance Bond to which it was not entitled.

27. The exculpatory terms in JPMC's Agreement and Application for Standby Letter of Credit are decidedly beneficial to the bank and present the plaintiffs with very little prospect of any recovery against the bank in the event it makes payment under letter of credit TFTS-868801.

28. By reason of the circumstances described in paragraphs 25 through 27 above, plaintiffs have no effective remedy against any of the potential wrongdoers and will be irreparably harmed if payment is made under the standby letter of credit.

29. TBI does not qualify for protection under § 5-109(a)(1) of the Uniform Commercial Code. On the basis of the allegations set forth in this Verified Complaint, plaintiffs are more likely than not to succeed on their claim of material fraud.

30. Because TBI's demand for payment under standby letter of credit no. TFTS-868801 is fraudulent, plaintiffs seek a temporary restraining order, followed by a preliminary injunction, to prevent JPMC from making any payment thereunder.

WHEREFORE, Plaintiffs pray:

a. That process in due form of law according to the usual practice of this Court may issue against Defendant citing it to appear and answer the foregoing, and failing such appearance and answer, to have judgment by default against the Defendant;

b. That this Court issue a Temporary Restraining Order to prevent and enjoin any payment by the Defendant under its standby letter of credit no. TFTS-868801, pending a hearing in this action;

c. That, at any such hearing, this Court then issue a preliminary injunction to further prevent and enjoin any payment by the Defendant under its standby letter of credit no. TFTS-868801, pending further order of the Court; and

d. For such other and further or different relief as this Court may deem just and proper in the premises.

Dated: New York NY
February 14, 2011

BURKE & PARSONS
Attorneys for Plaintiff
Archer Daniels Midland Company
and ADM Rice, Inc.

By: ______________________
Christopher H. Dillon
100 Park Avenue
New York NY 10017-5533
(212) 354-3800
dillon@burkeparsons.com

## VERIFICATION

STATE OF NEW YORK )
)
COUNTY OF WESTCHESTER)

I, CHRISTIAN BONNESEN, provide the following verification:

I am the president of plaintiff ADM Rice, Inc. I have read the foregoing Complaint, the contents of which are true to my knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

CHRISTIAN BONNESEN

## DECLARATION PURSUANT TO 28 U.S.C. § 1746

I verify under penalty of perjury that the foregoing is true and correct and has been executed on this, the 13th day of February, 2011.

CHRISTIAN BONNESEN