Christopher H. Dillon
Keith W. Heard
Burke & Parsons
100 Park Avenue
New York, NY  10017-5533
Tel:  (212) 354-3817
Fax:  (212) 221-1432

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARCHER DANIELS MIDLAND COMPANY and ADM RICE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., <br><br> Defendant. | 11 Civ. 0988 (JSR) <br><br><br> ECF Case |

**MEMORANDUM OF LAW OF ARCHER DANIELS MIDLAND COMPANY AND ADM RICE, INC. IN SUPPORT OF APPLICATION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

I    PRELIMINARY STATEMENT ................................................................................. 1

II    THE PARTIES AND JURISDICTION ...................................................................... 1

III    BACKGROUND ......................................................................................................... 2

IV    STANDARD FOR GRANTING INJUNCTIONS ...................................................... 5

V    ARGUMENT ............................................................................................................... 6

    1.   ADM and ADM Rice Are Likely to Succeed on theMerits
Based on the "Fraud or Forgery" Exception under the UCC ........................... 6

    2.   If Injunctive Relief is Not Granted,
ADM and ADM Rice will Suffer Irreparable Harm .......................................... 8

    3.   The Balance of Hardships Tip
Decidedly in Favor of the Plaintiffs ................................................................. 9

VI    CONCLUSION .......................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Brenntag Intern'l Chemicals, Inc. v. Bank of India*,
175 F.3d 245 (2d Cir. 1999) .................................................................................. 5, 9

*Excelsior Funds, Inc. v. JPMorgan Chase Bank, N.A.*,
470 F.Supp.2d 312 (S.D.N.Y. 2006) ......................................................................... 2

*Itek Corp. v. The First National Bank of Boston*,
730 F.2d 19 (1st Cir. 1984) ............................................................................. 6, 7, 8

*United Bank Ltd. v. Cambridge Sporting Goods Corp.,*
41 N.Y.2d 254, 360 N.E.2d 943 (1976) .................................................................... 6

**Statutes**

28 U.S.C. §1332 ......................................................................................................... 2

28 U.S.C. §1348 ......................................................................................................... 2

N.Y. U.C.C. Law §5-109 (McKinney 2000) ........................................................... 1, 6

N.Y. U.C.C. Law §5-109, Official Comment 1 ......................................................... 6

N.Y. U.C.C. Law §5-109, Official Comment 2 ......................................................... 6

**I   PRELIMINARY STATEMENT**

Archer Daniels Midland Company ("ADM") and ADM Rice, Inc. ("ADM Rice") submit this memorandum, together with the accompanying Declaration of Christian Bonnesen ("Bonnesen Decl."), and the affidavit of Christopher H. Dillon ("Dillon Aff."), and the respective exhibits annexed thereto, in support of their application for a preliminary injunction.  This is an action for injunctive relief pursuant to New York's statutory enactment of Uniform Commercial Code §5-109 because the beneficiary of a standby letter of credit -- issued by defendant JPMorgan Chase Bank N.A. -- has falsely represented that there has been a legitimate drawdown of its performance bond.  That false representation has been made in order to trigger a payment by JPMC under the standby letter of credit for which Plaintiffs ADM and ADM Rice are the account parties.

**II   THE PARTIES AND JURISDICTION**

Plaintiff, Archer Daniels Midland Company ("ADM"), is an agricultural conglomerate, incorporated in Delaware, with an office and principal place of business at 4666 Faries Parkway in Decatur, Illinois  62526.  Plaintiff, ADM Rice, Inc. ("ADM Rice"), is also a Delaware corporation, with an office and principal place of business at Suite 605, 660 White Plains Road, Tarrytown, NY  10591.  ADM Rice is a wholly-owned subsidiary of ADM.

Defendant, JPMorgan Chase Bank, N.A. ("JPMC"), is a national banking association with its main office in Columbus, Ohio, as designated in its articles of

association. Although JPMC has offices in New York, under 28 U.S.C. §1348, it is deemed to be a citizen of the state in which it is "located," which is Ohio and as a result diversity jurisdiction exists for this action under 28 U.S.C. §1332. *See*, *Excelsior Funds, Inc. v. JPMorgan Chase Bank, N.A.*, 470 F.Supp.2d 312 (S.D.N.Y. 2006). The forum selection clause in JPMC's form Application and Agreement for Standby Letter of Credit dated August 26, 2010 (*see*, para. 10 of Exhibit B to the Bonnesen Decl.), requires that any "legal action or proceeding arising out of or in connection with this Agreement" must be brought in "a state or federal court located in the Borough of Manhattan, City of New York, State of New York."

## III   BACKGROUND

On August 26, 2010, ADM, as Applicant/Obligor, for and on behalf of ADM Rice, as the Account Party, applied for issuance by defendant JPMC of a letter of credit in the amount of $6,926,850.00. The letter of credit was applied for so that a Performance Bond could be issued in favor of the Grain Board of Iraq ("GBI") in connection with GBI's purchase from ADM Rice of approximately 120,000 metric tons of "American rice" on the basis of CIF terms, at a cost of $549.75 per metric ton (i.e., the contract had a total purchase cost of about $69 million) contract no. MOT/GB/R5/4/2010. Attached to the application (*see*, Exhibit B to the Bonnesen Decl.) was the wording for the Performance Bond. That language included the following:

> All claims made under this performance bond must be accompanied by an SGS original laboratory report specifically certifying that the quality of the purchased commodity does not meet the contractual specifications.

Thus, it is clear the Performance Bond was being posted to cover potential quality claims.

On August 27, 2010, JPMC issued its irrevocable standby letter of credit no. TFTS-868801 to the Trade Bank of Iraq ("TBI") in the amount of $6,926,850.00. The letter of credit requested the TBI to issue a performance bond in the same amount for the account of ADM Rice in favor of the GBI. The actual terms that were to appear in the Performance Bond – including the requirement that all claims thereunder must be accompanied by an adverse SGS quality report – were set forth in the letter of credit itself.

The letter of credit provided that the amount thereof would be:

> AVAILABLE AGAINST YOUR [i.e., the TBI's] AUTHENTICATED SWIFT THAT YOU HAVE DULY ISSUED YOUR PERFORMANCE BOND AS REQUESTED BY OURSELVES AND THAT YOU HAVE RECEIVED **A CLAIM IN ACCORDANCE WITH THE TERMS OF THE PERFORMANCE BOND** [emphasis added].

The letter of credit provided further as follows:

> WE UNDERTAKE TO PAY TO THE DEVELOPMENT FUND FOR IRAQ, FOR ACCOUNT OF TRADE BANK OF. IRAQ ON YOUR FIRST AUTHENTICATED SWIFT DEMAND, ANY AMOUNT THAT YOU MAY CLAIM NOT EXCEEDING THE TOTAL VALUE OF THE SAID BOND **PROVIDED THAT SUCH DEMAND IS IN ACCORDANCE WITH THE PERFORMANCE BOND**. [Emphasis added.]

A copy of the letter of credit is annexed as Exhibit C to the Bonnesen Declaration.

MEMORANDUM OF LAW OF ARCHER DANIELS MIDLAND COMPANY                    Page 3
AND ADM RICE, INC. IN SUPPORT APPLICATION FOR A PRELIMINARY
INJUNCTION AND TEMPORARY RESTRAINING ORDER

In accordance with its obligations under the sales contract, ADM Rice has shipped rice from the United States to Iraq on three vessels. With respect to quality, all of the rice shipped on board these vessels was approved by SGS and the U.S. Department of Agriculture. The first of the three vessels, the M/V CAPTAIN HARRY, has recently completed unloading its cargo of approximately 40,000 metric tons of rice at Umm Qasr, Iraq. The other two vessels are still en route.

On Friday, February 11, 2011, Andrew Kosik of JPMC sent an email to other employees in the bank indicating that, in his view, JPMC had "received an in compliance drawing" under the standby letter of credit in favor of TBI and that, because JPMC intended to honor the request, JPMC should obtain reimbursement from ADM.

Following receipt of the email indicting that JPMC was planning to payout the letter of credit, on Friday afternoon (February 11th), the president of ADM Rice, Christian Bonnesen, sent a letter by email to the Global Trade Services unit at JPMC in which he warned that ADM Rice considered a demand for payment under the letter of credit wrongful because there could not have been a legitimate basis for the Performance Bond to be drawn down. The letter then proceeded to explain that a demand under the Performance Bond would be wrongful "because only the first shipment has been delivered, and because, contrary to the explicit requirements of the Performance Bond, there cannot be 'an SGS original laboratory report

specifically certifying that the quality of the purchased commodity does not meet the contractual specifications'."

Thereafter, ADM Rice corresponded with the Iraqi Branch Manager for SGS (previously known as "Société Générale de Surveillance"), who confirmed by email on February 12, 2011 that SGS has not issued a laboratory report in relation to the cargo certifying that the quality of the rice did not meet the contractual specifications.  (*See*, Exhibit I to Bonnesen Decl.).

Although JPMC has been notified by plaintiffs that SGS had not issued the report necessary to accompany a claim under the Performance Bond (so that no legitimate drawing under the terms of the Performance Bond can have occurred), JPMC has, nevertheless, indicated that it intends to make payment even if any drawing statement by TBI is fraudulent and defective.

## IV    STANDARD FOR GRANTING INJUNCTIONS

A party seeking "[t]o justify the issuance of preliminary injunctive relief must ordinarily show that it will suffer irreparable harm and either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor. *Brenntag Intern'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (affirming grant of injunction against letter of credit payment based upon likelihood of fraud in the beneficiary's drawing presentment).

**V   ARGUMENT**

   **1. ADM and ADM Rice Are Likely to Succeed on the Merits Based on the "Fraud or Forgery" Exception under the UCC.**

ADM and ADM Rice are likely to succeed on the merits under the "fraud or forgery" doctrine applicable to letters of credit. *See*, *United Bank Ltd. v. Cambridge Sporting Goods Corp.,* 41 N.Y.2d 254, 259, 360 N.E.2d 943, 948 (1976) ("where 'fraud in the transaction' has been shown and the holder has not taken the draft in circumstances that would make it a holder in due course, the customer may apply to enjoin the issuer from paying drafts drawn under the letter of credit."); *see also*, N.Y. U.C.C. Law §5-109 (McKinney 2000).

As set forth in the Official Comment 1 to §5-109 the relevant analysis for determining whether the fraud exception has been properly invoked requires the court to "examine the underlying transaction when there is a allegation of material fraud, for only by examining that transaction can one determine whether a document is fraudulent or the beneficiary has committed fraud and, if so, whether the fraud was material." Official Comment 2 to U.S.C. §5-109.

*Itek Corp. v. The First National Bank of Boston*, 730 F.2d 19 (1st Cir. 1984) involved facts substantially similar to those at issue here. There, the plaintiff-contractor, Itek, had entered into an agreement with the Ministry of War of the imperial government of Iran. Itek's contract with the Ministry of War called for Itek to provide a performance guarantee of the contract (in the form of performance guarantee letters), to be issued

by an approved Iranian bank, which in this case was Bank Melli, an instrumentality of the Iranian Government.  As a condition of issuing the performance guarantee letters, Bank Melli required Itek to supply standby letters of credit from an American Bank.  Such letters were ultimately issued by the defendant, The First National Bank of Boston ("FNBB").

In analyzing whether Itek could enjoin FNBB from making payment of the letters of credit, then Circuit Judge Stephen Breyer acknowledged that, although courts are typically hesitant to enjoin payment of letters of credit, the need for exceptions to this rule of thumb is readily apparent.  These include circumstances in which the beneficiary "has knowingly failed to comply with an important term in the underlying contract which the parties intended as a precondition for the beneficiary's exercise of his rights to call the letter [of credit]."  730 F.2d at 24.  In such circumstances, Judge Breyer noted that courts "have not hesitated to examine the documents that the letter [of credit] calls for to see if they show fraud.  *Id*.

Applying the foregoing principles to the case before it, the *Itek* Court took it as a given that "Melli could only legitimately call the FNBB letters if the Ministry had legitimately called the Melli guarantees."  *Id*. at 25.  Thus, the issue became "whether, given the terms of the contract, the Ministry and in turn Melli have a colorable right to call the 'guarantees,' or whether Itek has successfully shown that, in light of the contractual terms governing the guarantees, the beneficiaries' demands for payment have 'absolutely no basis in fact.'"  *Id.*  If Melli was determined to have "no plausible or

colorable basis under the contract to call for payment of the letters, its effort to obtain the money [would be] fraudulent and payment [could] be enjoined." *Id*. The Court found that Itek had demonstrated fraud and thereby met this standard. It thus affirmed the district court's grant of a temporary injunction enjoining FNBB from paying the letters of credit. *Id.*

As in *Itek*, TBI can only legitimately call for payment of the JPMC letters of credit if GBI, in turn, had legitimately called upon the TBI Performance Bond. *Id*. Here, however, there is neither any basis in fact nor any plausible or colorable claim that SGS has issued any "report specifically certifying that the quality of the purchased commodity does not meet the contractual specifications." *See,* Bonnesen Decl., paras. 6, 7, 21 and 22. To allow JPMC to make payment in these circumstances would permit TBI to work a material fraud.

      2.  **If Injunctive Relief is Not Granted, ADM and ADM Rice will Suffer Irreparable Harm.**

Because there is no effective remedy to recover any payout made under the letter of credit, ADM and ADM Rice will suffer irreparable harm unless JPMC is enjoined from paying out on the demand of TBI. Chasing TBI, a bank which has no known presence in the United States and with whom ADM and ADM Rice have no contractual relationship, for money damages in Iraq, is almost certainly futile. *See, e.g.*, *Itek Corp. v. The First National Bank of Boston*, 730 F.2d 19, 22 (2d Cir. 1984) For similar reasons, pursuing money damages in Iraq against GBI, an Iraqi

government-controlled entity, which also is not present in the United States, is also likely to be futile.  Finally, as recognized by the Second Circuit in *Brenntag*, the difficulties of pressing a (post-payment) wrongful honor claim against JPMC, are added grounds for irreparable harm. 175 F.3d at 250 ("the district court correctly noted that were the LOC paid upon, Brenntag's potential claims against NDL and BOI would be significantly weaker, both substantively and procedurally...").

### 3.   The Balance of Hardships Tip Decidedly in Favor of the Plaintiffs.

Defendant would suffer no harm if it were to be enjoined.  Under the circumstances, and in the absence of the necessary SGS report impugning the commodities' quality, Defendant is within its rights to refuse presentment of the letter of credit of its own accord.

Clearly, for the reasons explained above, the harm ADM and ADM Rice would suffer if an injunction does not issue far outweighs any hardship that could be incurred by Defendant.  ADM and ADM Rice would likely be left without any adequate remedy at law if it is forced to sue JPMC for damages and demonstrate the latter's "gross negligence and willful misconduct."  Similarly, plaintiffs would be forced to engage in a futile pursuit of justice against either TBI or GBI in Iraq.  The public interest also will be greatly furthered by the issuance of a preliminary injunction in this matter as it will avoid a substantial and material fraud in the amount of $6,926,850.00.

## VI   CONCLUSION

For the foregoing reasons, ADM and ADM Rice respectfully request that the Court continue its temporary restraining order granted upon oral application the evening of February 14, 2011 and grant, after hearing the parties, the Plaintiffs' request for an injunction.

Dated:   New York, NY
         February 14, 2011

                                  BURKE & PARSONS
                                  Attorneys for Plaintiffs
                                  Archer Daniels Midland Company and
                                  ADM Rice, Inc.


                                  By:  /s/Christopher H. Dillon
                                      Christopher H. Dillon
                                      100 Park Avenue
                                      New York NY  10017-5533
                                      (212) 354-3812
                                      dillon@burkeparsons.com


9240_0001_S05.DOCX