UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ARCHER DANIELS MIDLAND COMPANY and ADM
RICE, INC.,

                        Plaintiffs,

      - against -

JPMORGAN CHASE BANK, N.A.,

                       Defendant.
-----------------------------------------------------------------x

11 Civ. 0988 (JSR)

**AFFIDAVIT OF JAMES E. ALONZO IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

STATE OF FLORIDA      )
                                ) ss.
COUNTY OF HILLSBOROUGH  )

      JAMES E. ALONZO, being duly sworn, deposes and says:

      1.      I am an Assistant Vice President with defendant JPMorgan Chase Bank, N.A. ("Chase"). I submit this affidavit in opposition to the motion of plaintiffs Archer Daniels Midland Company and ADM Rice, Inc. (collectively "ADM") for a preliminary injunction.

      2.      This affidavit is based on my personal knowledge and review of relevant books and records.

### THE LETTER OF CREDIT

      3.      On August 26, 2010, Archer Daniels Midland Company applied to Chase for a Standby Letter of Credit (the "Letter of Credit") on behalf of ADM Rice. The proposed Letter of Credit was in the aggregate sum of $6,926,850, with Chase acting as issuing bank and the Trade Bank of Iraq ("TBI") acting as beneficiary. Issuance of the Letter of Credit was to be contingent upon TBI's issuing a performance bond (the "Performance Bond") to the Grain Board of Iraq ("GBI"), guaranteeing ADM's performance of a commercial contract between GBI and

ADM, pursuant to which ADM would make certain shipments of rice to Iraq. A true and correct copy of ADM's application to Chase for the Letter of Credit is annexed hereto as Exhibit A.

4. On August 27, 2010, Chase issued the Letter of Credit. A true and correct copy of the Letter of Credit is annexed hereto as Exhibit B. The Letter of Credit is governed by the International Chamber of Commerce's Uniform Customs and Practice for Documentary Credits, 2007 revision, publication number 600 (hereinafter "UCP"). See Exhibit B at 2.

5. The Letter of Credit provides that TBI may draw funds (in an amount up to the aggregate sum of $6,926,850) as follows:

> [Funds are] available against your authenticated Swift/Tested Telex that you have duly issued your Performance Bond as requested by ourselves and that you have received a claim in accordance with the terms of the performance bond.

See Exhibit B.

6. Thus, other than an authenticated Swift notice advising that TBI has received a claim in accordance with the terms of the performance bond, the Letter of Credit imposes no additional documentary requirements upon TBI in order to draw upon the letter.[1]

## TBI'S COMPLIANCE WITH THE LETTER OF CREDIT'S PAYMENT CONDITION

7. As contemplated by the Letter of Credit, TBI issued the Performance Bond in GBI's favor.

---

[1] I understand that ADM is attempting to claim that payment under the Letter of Credit requires Chase to review an SGS laboratory report certifying that ADM's shipment of rice to the GBI was below contractual standards. In fact, the Letter of Credit contains no such requirement. While the terms of the Performance Bond require GBI to submit an SGS laboratory report to TBI in order to make a claim, the Letter of Credit does not require TBI to forward the SGS laboratory report to Chase. Rather, TBI is simply required to send Chase an authenticated Swift notice confirming that a claim in accordance with the terms of the Performance Bond has been received.

8. On February 10, 2011, TBI requested a drawing under the Letter of Credit by sending to Chase an authenticated Swift notice stating that it had received a claim in accordance with the terms of the Performance Bond and seeking to draw upon the Letter of Credit in the sum of $6,926,850. The February 10, 2011 Swift notice was facially valid and fully comported with the requirements of the Letter of Credit. A true and correct copy of the February 10, 2011 Swift notice from TBI is annexed hereto as Exhibit C.

### ADM'S ATTEMPT TO STOP PAYMENT

9. On February 11, 2011, Satya Kargha at Chase sent an email to Shannon Nail of ADM informing Ms. Nail that TBI had sent to Chase a drawing statement in the sum of $6,926,850.

10. That same day, Christian Bonnesen of ADM sent Chase a letter in which he asked that Chase dishonor TBI's payment draw. To support his request, Mr. Bonnesen contended that GBI had not complied with the terms of the Performance Bond insofar as it had failed to obtain an SGS laboratory report, and he further alleged that the full shipment of grain which ADM owed under the underlying contract had not yet reached Iraq. A true and accurate copy of Mr. Bonnesen's letter to Chase is annexed hereto as Exhibit D.

11. In fact, the allegations contained in Mr. Bonnesen's letter did not provide a basis for Chase to dishonor TBI's payment draw, given that the Letter of Credit does not contain any provision requiring TBI to submit to Chase an SGS laboratory report, nor does it contain any provision requiring TBI to submit to Chase documents evidencing that the full shipment of rice had arrived in Iraq.[2]

---

[2] On February 12, 2011, Chase received a letter from Keith Heard with the law firm Burke & Parsons which again alleged that GBI had never obtained an SGS laboratory report in connection with the grain shipment at issue. Mr. Heard annexed to his letter a February 12, 2011 email exchange between ADM's Iraq office and an Amjad Majdoubeh of SGS's office in Baghdad in which Mr. Majdoubeh states that SGS did not issue a report in

3

12. On February 14, 2011, I sent a reply letter to Mr. Bonnesen informing him that TBI had submitted a payment draw to Chase in conformance with the Letter of Credit's terms, which Chase was required to honor. I further reminded Mr. Bonnesen that the Letter of Credit Agreement had to be considered entirely apart from disputes involving the underlying commercial transaction and that it was inappropriate for ADM to attempt to involve Chase in such disputes.

13. In sum, TBI complied with the payment condition set forth by the Letter of Credit, and there is no basis for ADM's demand that Chase dishonor TBI's payment draw. Accordingly, I respectfully request that ADM's motion for a preliminary injunction be denied.

                                              JAMES E. ALONZO

Sworn to before me this
17th day of February, 2011.

Notary Public



---

connection with "MB Captain Harry currently discharging at UmQasr." A true and correct copy of the February 12, 2011 letter from Mr. Heard to Chase is annexed hereto as Exhibit E.

This communication from Mr. Heard and the email exchange annexed to it did not provide any basis for Chase to reject TBI's payment draw. As noted, the Letter of Credit did not require TBI to submit documentary evidence to Chase showing that an SGS report had been obtained but rather merely required a statement that TBI had received a claim in accordance with the terms of the Performance Bond, with which requirement TBI complied. In any event, it is impracticable and unreasonable to place Chase in a position whereby it would be required to undertake a factual investigation of events occurring in Iraq based on a cryptic email exchange by two individuals unknown to Chase. Rather, Chase it entitled to rely on the facial validity of the authenticated Swift statement submitted by TBI.

1087837_2