UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ARCHER DANIELS MIDLAND COMPANY and
ADM RICE, INC.,

                           Plaintiffs,

         - against -

JPMORGAN CHASE BANK, N.A.,

                          Defendant.
------------------------------------------------------------------x

11 Civ. 0988 (JSR)

## CHASE'S MEMORANDUM OF LAW IN OPPOSITION
## TO ADM'S MOTION FOR A PRELIMINARY INJUNCTION

SATTERLEE STEPHENS BURKE & BURKE LLP
230 Park Avenue
New York, New York 10169
(212) 818-9200
*Attorneys for Defendant*
*JPMorgan Chase Bank, N.A.*

1088386_1

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| FACTUAL BACKGROUND | 2 |
|     A. The Letter of Credit | 2 |
|     B. TBI's Compliance with the Letter of Credit's Payment Requirements | 3 |
|     C. ADM's Attempts to Have Chase Dishonor the Payment Draw | 3 |
| DISCUSSION | 4 |
|     I. ADM IS NOT ENTITLED TO INJUNCTIVE RELIEF | 4 |
|         A. ADM Has Failed to Show a Likelihood of Success on the Merits | 4 |
|         B. There Is No Risk of Irreparable Harm to ADM | 8 |
|         C. ADM Has Not Demonstrated That the Balance of Equities Weighs in Its Favor | 9 |
|     II. TBI IS A NECESSARY PARTY | 10 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES


**CASES**

410 Sixth Avenue Foods, Inc. v. 410 Sixth Avenue, Inc.,
  197 A.D.2d 435, 602 N.Y.S.2d 835 (1st Dept. 1993) .............................................. 5

AVP Baker Inc. v Harris Trust & Savings Bank,
  761 F. Supp. 1293 (W.D. Mich. 1991) ........................................................... 8, 9

Continental Grain Company v. Meridien International Bank, Limited,
  894 F. Supp. 654 (S.D.N.Y. 1995) .................................................................. 5

Crouse-Hinds Co. v. InterNorth, Inc.,
  634 F.2d 690 (2d Cir. 1980) ......................................................................... 10

First Commercial Bank v. Gotham Originals, Inc.,
  64 N.Y. 287, 46 N.Y.S.2d 715 (1985) ............................................................. 5

Itek v. First National Bank of Boston,
  730 F.2d 19 (1st Cir. 1984) ........................................................................... 9

Map Marine Limited v. China Construction Bank Corp,
  2009 WL 6019497, slip. op. (Sup. Ct. N.Y. Co. June 30, 2009) ............................. 5

Nissho Iwai Europe PLC v. Korea First Bank,
  99 N.Y.2d 115, 752 N.Y.S.2d 259 (2002) ........................................................ 6

Recon/Optical v. Government of Israel,
  816 F.2d 854 (2d Cir. 1987) ........................................................................ 8

Semetex Corporation v. UBAF Arab American Bank,
  853 F. Supp. 759 (S.D.N.Y. 1994) ......................................................... 6, 7, 8

Stinger Construction Company, Inc. v. American Insurance Company,
  102 Ill. App. 3d 919, 430 N.E.2d 1, 58 Ill. Dec. 59 (Ill. App. 1981) ........................ 7

Weizmann Institute of Science v. Neschis,
  239 F. Supp. 2d 234 (S.D.N.Y. 2002) ............................................................ 10

**STATUTES AND RULES**

Fed. R. Civ. P. 19 ................................................................................................... 10

International Chamber of Commerce Uniform Customs and Practice for Documentary
  Credits (2007) ................................................................................ 2, 5, 6

ii

1088386_1

Defendant JPMorgan Chase Bank, N.A. (hereinafter "Chase") submits this memorandum of law in opposition to the motion of plaintiffs Archer Daniels Midland Company and ADM Rice, Inc. (collectively hereinafter "ADM") for a preliminary injunction.

## PRELIMINARY STATEMENT

By this motion, ADM seeks to enjoin Chase from allowing non-party Trade Bank of Iraq ("TBI") to draw payment under the terms of a standby letter of credit for which Chase is the issuing bank, ADM is the applicant and TBI is the beneficiary (the "Letter of Credit").

ADM has failed to show entitlement to injunctive relief in this forum for the following reasons: as an initial matter, there is little likelihood of success on the merits, given that the documentary evidence before the Court shows that TBI has in fact complied with the specified terms for drawing payment on the Letter of Credit.  Moreover, there is no cognizable basis for ADM's attempt to invoke the narrowly construed fraud exception to enforcement of letters of credit:  ADM's allegations of wrongful conduct pertain not to Chase and the Letter of Credit itself but rather to a dispute involving parties to the underlying transaction, a dispute which does not involve Chase and which cannot be resolved on an action to enforce the Letter of Credit.

There is likewise no risk of irreparable harm to ADM absent injunctive relief. ADM has not shown that it faces any insurmountable obstacle to bringing an action for money damages against TBI and/or of the Grain Board of Iraq ("GBI"), the contracting party on the commercial transaction underlying the Letter of Credit, and in fact a separate action for money damages is the appropriate recourse for ADM (as opposed to involving Chase any further in a dispute to which it is a stranger).  ADM has similarly failed to make a showing that the balance of equities weighs in its favor -- given Chase's compelling business interest in ensuring that letters of credit are customarily and reliably enforced according to their terms and given ADM's

1088386_1

failure to even consider the potential risks of harm to non-party TBI in the event the motion were granted.

Finally, even if there were somehow a basis for an action on the Letter of Credit to proceed, ADM should not be permitted to move forward here unless, at a bare minimum, TBI is joined as a party defendant. As the beneficiary of the Letter of Credit, TBI is plainly a necessary party given TBI's direct financial interest in the outcome of this litigation and given that ADM's allegations of purported wrongful conduct involving TBI cannot be meaningfully addressed -- much less resolved -- absent its participation.

## FACTUAL BACKGROUND

Facts underlying this motion are set forth in the affidavit of James E. Alonzo sworn to February 17, 2011 (the "Alonzo Affidavit").

### A.   The Letter of Credit

On or about August 26, 2010, Archer Daniels Midland Company applied to Chase for a Standby Letter of Credit on behalf of ADM Rice, Inc. Alonzo Aff. ¶3. The proposed Letter of Credit would be in the aggregate sum of $6,926,850 with Chase to act as issuing bank and TBI to act as beneficiary. A copy of the Application for the Standby Letter of Credit is annexed to the Alonzo Affidavit as Exhibit A. Issuance of the Letter of Credit was contingent upon TBI providing the GBI with a performance bond (the "Performance Bond") guaranteeing ADM's performance on a commercial transaction involving ADM's sale of rice to the GBI. Alonzo Aff. ¶3.

On August 27, 2010, Chase issued the Standby Letter of Credit. Alonzo Aff ¶4. The Letter of Credit expressly provides that it is governed by the International Chamber of Commerce's Uniform Customs and Practice for Documentary Credits, 2007 revision, publication number 600 (hereinafter "UCP"). See Exhibit A at 2.

>Under the terms of the Letter of Credit, TBI may draw funds as follows:
>
>[Funds are] available against your authenticated Swift/Tested Telex that you have duly issued your Performance Bond as requested by ourselves and that you have received a claim in accordance with the terms of the performance bond.

See Exhibit A.

Thus, other than an authenticated Swift notice advising that TBI has received a claim in accordance with the terms of the performance bond, the Letter of Credit does not require TBI to submit any additional documents to Chase in order to draw upon the Letter of Credit. See Exhibit A.

In particular, although the Performance Bond requires that a GBI claim for payment is contingent upon GBI's providing TBI with an SGS laboratory report (verifying that the rice shipment at issue is below contractual standards), the Letter of Credit itself does not require that TBI submit a copy of the SGS report for Chase's review. Rather, in order to draw funds, TBI is only required to submit an authenticated Swift notice confirming that a claim consistent with the terms of the Performance Bond has been received. Alonzo Aff. ¶6, fn 1.

**B.   TBI's Compliance with the Letter of Credit's Payment Requirements**

On February 10, 2011, Chase received an authenticated Swift notice from TBI stating that it had received a claim from GBI in accordance with the terms of the Performance Bond and seeking to draw upon the Letter of Credit in the sum of $6,926,850. See Alonzo Aff. ¶8 and Exhibit C thereto. The transmission was a facially valid authenticated Swift notice which complied with the requirements of the Letter of Credit. Id.

**C.   ADM's Attempts to Have Chase Dishonor the Payment Draw**

On February 11, 2011, Chase received a letter from Christian Bonnesen of ADM asking Chase to dishonor TBI's payment draw. Mr. Bonnesen alleged that GBI had not

3

complied with the terms of the Performance Bond by reason of its purported failure to submit an SGS original laboratory report stating that the rice shipment did not meet contractual specifications. Mr. Bonnesen further claimed that the full shipment of rice had yet to arrive in Iraq. A copy of the February 11, 2011 letter from Mr. Bonnesen is annexed to the Alonzo Affidavit as Exhibit D.

As noted, however, the Letter of Credit, however, does not contain any provision requiring TBI to submit documentary evidence of submission of a valid SGS laboratory report or documentary evidence demonstrating that the full grain shipment had arrived in Iraq. Rather, TBI's obligation is to submit an authenticated Swift notice confirming that a claim in accordance with the Performance Bond had been received. Alonzo Aff. ¶11.

On February 14, 2011, Mr. Alonzo sent a reply letter to Mr. Bonnesen informing him that TBI had submitted a draw to Chase which conformed to the terms of the Letter of Credit and that TBI had accordingly complied with the Letter of Credit's conditions to payment. A copy of the February 14, 2011 letter to Mr. Bonnesen is annexed to the Alonzo Aff. as Exhibit E. Alonzo also reminded Mr. Bonnesen that it was inappropriate to involve Chase in disputes involving the underlying transaction. Alonzo Aff. ¶12.

## DISCUSSION

### I.

### ADM IS NOT ENTITLED TO INJUNCTIVE RELIEF

**A.     ADM Has Failed to Show a Likelihood of Success on the Merits**

ADM has failed to demonstrate a likelihood of success on the merits because the claims it raises on this motion pertain not to the Letter of Credit – with which Chase and non-party TBI have complied -- but rather to disputes involving the Performance Bond and ADM's commercial transaction with GBI, which do not involve Chase.

4

In construing letters of credit, New York courts consistently follow the so-called "independence principle," pursuant to which an issuing bank's obligations under a letter of credit are completely separate from and independent of the rights and obligations of the parties to the underlying commercial transaction. Continental Grain Company v. Meridien International Bank, Limited, 894 F. Supp. 654 (S.D.N.Y. 1995). See also 410 Sixth Avenue Foods, Inc. v. 410 Sixth Avenue, Inc., 197 A.D.2d 435, 436, 602 N.Y.S.2d 835, 836 (1st Dept. 1993) (same); Map Marine Limited v. China Construction Bank Corp, 2009 WL 6019497, slip. op. at 5 (Sup. Ct. N.Y. Co. June 30, 2009) (same).

Under the independence principal, payment is due to the beneficiary of a letter of credit upon the beneficiary's compliance with the payment demand terms specifically contemplated by the letter of credit. Marine Map, 2009 WL 6019497, slip. op. at 5. The issuing bank has no obligation whatsoever to look beyond the payment documents presented by the beneficiary and ascertain whether parties to the underlying transaction have complied with their obligations. First Commercial Bank v. Gotham Originals, Inc., 64 N.Y. 287, 294, 46 N.Y.S.2d 715, 719 (1985) (parties to letter of credit transaction deal with documents, not with facts the documents purport to reflect).

Moreover, where, as here, a letter of credit is governed by the UCP, even if the letter of credit includes a provision which purports to provide for additional "non-documentary conditions" to payment (i.e. conditions which require something more than a review of the facial validity of payment documents), such a provision is void and unenforceable. In this regard, Article 14(h) of the UCP specifically provides as follows:

> If a credit contains a condition without stipulating the document to indicate compliance with the condition, banks will deem such condition as not stated and will disregard it.

5

This provision has been consistently enforced by the New York courts, ensuring that an issuing bank's obligations prior to making payment to the beneficiary are strictly limited to a review of the facial validity of the payment documents -- and that any provisions which appear to expand the bank's obligations beyond this are to be disregarded. Nissho Iwai Europe PLC v. Korea First Bank, 99 N.Y.2d 115, 123, 752 N.Y.S.2d 259, 265 (2002) (construing corresponding provision of UCP 500).

Here, the documentary evidence shows that TBI has complied with the express terms under which a payment draw would be available to the beneficiary, to wit: on February 11, 2011, TBI sent Chase an authenticated, facially valid Swift Notice stating that it had received a claim in accordance with the terms of the performance bond. See Exhibit D.

Given the undisputed documentary evidence of TBI's compliance with the Letter of Credit's payment terms, Chase was not required to take any additional verification steps prior to making payment.[1]

In arguing that injunctive relief is nonetheless appropriate, ADM contends that the so-called "fraud exception" to letter of credit enforcement should be applied. However, ADM has failed to make the showing required to warrant invocation of this very narrowly construed doctrine.

The fraud exception to letter of credit enforcement is generally limited to situations where there is fraud in connection with the letter of credit transaction itself -- for example, where a payment demand submitted to the issuing bank has been forged. Semetex

---

[1] ADM cites an additional provision of the Letter of Credit which provides that Chase will pay to TBI "any amount that [TBI] may claim not exceeding the total value of the said bond provided that such demand is in accordance with the Performance Bond." Given that this provision does not require TBI to submit any additional documents to Chase, however, it does not in any way expand Chase's verification obligations prior to making payment. As noted above, under the "non-documentary condition" clause of the UCP and well-settled case law, Chase's obligations as issuing bank do not extend beyond a review of the facial validity of payment documents presented by the beneficiary. Nissho Iwai Europe, 99 N.Y.2d at 123, 752 N.Y.S.2d at 365.

Corporation v. UBAF Arab American Bank, 853 F. Supp. 759, 772 (S.D.N.Y. 1994). In the extremely rare instances where the court looks beyond the letter of credit transaction to alleged fraudulent conduct in the underlying transaction, the aggrieved party must make a substantial evidentiary showing of "outright fraudulent practice." Id. at 774. See also Stinger Construction Company, Inc. v. American Insurance Company, 102 Ill. App. 3d 919, 430 N.E.2d 1, 58 Ill. Dec. 59 (Ill. App. 1981) (fraud exception limited to cases where "the wrongdoing of the beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served").

  Here, ADM has not alleged that the documents submitted on the letter of credit were forged or otherwise facially defective. Rather, it has alleged problems with the underlying transaction, contending that GBI failed to provide TBI the SGS report as contemplated by the Performance Bond (but not the Letter of Credit) and that the full shipment of rice due on the underlying contract has yet to arrive in Iraq. However, neither ADM's brief nor its proposed complaint articulate how these factual allegations give rise to a fraud claim. Indeed, even if taken at full face value, these allegations are more reflective of mere non-compliance with a contract term or simply a mistake or oversight as opposed to outright intentional misconduct.

  Nor has ADM submitted any evidence of intentional wrongdoing. The one evidentiary submission ADM provides on this motion is a cryptic email from an SGS employee in Baghdad to ADM's Iraq office in which the SGS employee states that no SGS report had been issued in connection with "MB Captain Harry currently discharging at UmQasr." Even assuming that the referenced cargo "currently discharging from UmQasr" is in fact the rice shipment at issue (and there is no conclusive evidence that this is the case), this email in no sense demonstrates fraudulent misconduct. On the contrary, the lack of an SGS report may simply be a

7

contract breach resulting from an oversight or other mistake. Or perhaps SGS may have created a laboratory report at some point after the email was sent, for example when the cargo (which was apparently "currently discharging" at the time of the email) had been fully unloaded. Or perhaps the SGS laboratory report was in fact completed and sent to the GBI unbeknownst to the SGS employee who sent the email. In sum, this single, inconclusive email exchange falls well short of evidence of the kind of pervasive and intentional wrongdoing required to trigger the fraud exception to letter of credit enforcement. Semetex, 853 F. Supp. at 772 (allegations consisting of nothing more than ordinary breach of contract insufficient to satisfy fraud exception); Recon/Optical v. Government of Israel, 816 F.2d 854 (2d Cir. 1987) (fraud exception not applied absent evidence that beneficiary of letter of credit acted in bad faith or actively impeded performance of underlying contract); AVP Baker Inc. v Harris Trust & Savings Bank, 761 F. Supp. 1293 (W.D. Mich. 1991) (fraud exception limited to "extraordinary circumstances" when alleged fraud vitiates the independent function of the letter of credit).

**B.    There Is No Risk of Irreparable Harm to ADM**

ADM cannot show that it would be irreparably harmed absent injunctive relief. On the contrary, ADM has a ready recourse in the event this motion is denied: commence an action against non-parties TBI and GBI for money damages based on their alleged non-compliance with the Performance Bond and/or the terms of the underlying commercial transaction. ADM has made no meaningful showing that such an action would be rendered fruitless absent injunctive relief against Chase or that TBI and GBI do not have the capacity to make ADM whole.

To the extent ADM would encounter jurisdictional or venue obstacles in litigating such an action arising from the TBI's and GBI's Iraq location or the application of Iraqi law to the underlying transaction, these are the risks ADM knowingly assumed when it entered into this

8

international business transaction. It cannot be permitted to use the Letter of Credit as a vehicle for circumventing these risks.[2]

### C. ADM Has Not Demonstrated That the Balance of Equities Weighs in Its Favor

In arguing that the balance of the equities weighs in its favor, ADM contends that while it would suffer irreparable harm absent injunctive relief, Chase would suffer no harm if injunctive relief were granted.

As noted above, however, ADM would suffer no irreparable harm absent injunctive relief given the availability of an action for money damages. Nor is it true that Chase would be unharmed if injunctive relief were granted: while Chase would not suffer an immediate financial loss from the proposed injunction, it does have a compelling business interest in ensuring that facially compliant letters of credit on international financial transactions can be readily honored under their terms free of the risk of litigation by one of the parties thereto. Accordingly, given Chase's interests in ensuring the continued reliability of letter of credit transactions, the balance of equities weighs in Chase's favor. See AVP Baker Inc. 761 F. Supp at 1300 (where underlying transaction on international letter of credit occurred in Iran, Court ruled that in balancing the equities between issuing bank and applicant, the applicant should bear consequences of entering into the underlying agreement with the Iranian government).

Moreover, ADM has entirely ignored the potential risk of harm to the non-party beneficiary TBI if the injunction were to be granted. Although Chase is not in a position to

---

[2] In this regard, Itek v. First National Bank of Boston, 730 F.2d 19 (1st Cir. 1984), upon which ADM heavily relies, is sharply distinguishable. Itek involved enforcement of an international letter of credit in which the dispute on the underlying commercial transaction arose in and around 1980, during the Iranian hostage crisis and at a time of extreme hostility toward U.S. interests in Iran. The Court held that in this climate, it would be futile for the applicant to sue in Iran for recovery of funds lost, giving rise to irreparable harm. ADM has failed to make any such showing here. While litigating its claims against TBI and GBI in Iraq might pose logistical obstacles to ADM, there is no showing that such obstacles would be insurmountable or that ADM would ultimately not be able to recover money damages in Iraq.

know whether the potential harm to TBI would be irreparable in nature, TBI must be afforded a full and fair opportunity to make such a showing before injunctive relief is granted.

## II.

## TBI IS A NECESSARY PARTY

Given the well-settled independence rule governing letter of credit transactions as discussed above, the appropriate recourse for ADM is to commence a separate action for money damages against TBI and/or GBI. However, even assuming *arguendo* that an action on the Letter of Credit is appropriate, the Court should not permit this action to proceed absent joinder of TBI.

Rule 19 of the Federal Rules of Civil Procedure mandates that a party is necessary to an action where, *inter alia*, the relief requested would prejudice the absent party and where a resolution of the action could not be achieved absent participation of the absent party. See e.g. Weizmann Institute of Science v. Neschis, 239 F. Supp. 2d 234, 251 (S.D.N.Y. 2002); Crouse-Hinds Co. v. InterNorth, Inc., 634 F.2d 690, 701 (2d Cir. 1980) (corporation which was party to contract at issue was necessary party because its rights would be prejudiced if relief were granted in its absence).

Here, TBI's participation as a party defendant is plainly mandated if this action is to proceed at all. The relief sought -- an injunction preventing Chase from making payment on the Letter of Credit -- would directly impact TBI. Moreover, it would be impossible to fairly litigate ADM's claim of purported fraud -- such as TBI's alleged failure to obtain an SGS report or any other alleged irregularities pertaining to the Performance Bond or the underlying transaction -- absent TBI's participation. Indeed, Chase, having itself had no involvement in events surrounding these transactions, could play no meaningful role in the litigation of these issues.

In sum, if this action is to proceed at all, it should only proceed with TBI's participation.[3]

## CONCLUSION

For all of the foregoing reasons, ADM's motion for a preliminary injunction should be denied in its entirety.

SATTERLEE STEPHENS BURKE & BURKE LLP

_____
James J. Coster
Alun W. Griffiths
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*
230 Park Avenue
Suite 1130
New York, NY 10169
212-818-9200

---

[3] In the event that ADM is unable to obtain jurisdiction over TBI, then TBI should be deemed an indispensable party and the action should be dismissed.

11