```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
ARCHER DANIELS MIDLAND COMPANY and      :
ADM RICE, INC.,                         :
                                        :
                        Plaintiffs,     :   11 Civ. 0988 (JSR)
                                        :
         - against -                    :
                                        :
JPMORGAN CHASE BANK, N.A.,              :
                                        :
                        Defendant.      :
-------------------------------------------------------------------x
```

### CHASE'S MEMORANDUM OF LAW IN FURTHER RESPONSE TO ADM'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to the Court's directive at the February 18, 2011 hearing in this matter (hereinafter the "February 18 Hearing"), defendant JPMorgan Chase Bank, N.A. (hereinafter "Chase") submits this memorandum in order to summarize its position on the motion of plaintiffs Archer Daniels Midland Company and ADM Rice, Inc. (collectively hereinafter "ADM") for a preliminary injunction.

As the issuing bank for the Letter of Credit at issue -- and as a non-party to either the performance bond or the rice shipment transaction underlying this dispute -- Chase principally seeks to ensure that the rights and obligations arising under the Letter of Credit are construed in a fashion consistent with the Letter of Credit's express terms. By contrast, Chase does not -- and, as a practical matter, cannot -- take a substantive position as to facts underlying the dispute currently unfolding in Iraq or the sufficiency of evidence presented by ADM at the February 18 Hearing.

As to the Letter of Credit itself, it is respectfully submitted that the documentary evidence conclusively shows that the Trade Bank of Iraq ("TBI"), as beneficiary, facially

1

complied with the Letter of Credit's terms for submitting a payment draw request. As Chase demonstrated in its previous submissions to the Court, those terms required only that TBI submit to Chase an authenticated Swift notice stating that it had received a claim "in accordance with the terms of the Performance Bond." The Letter of Credit contained no requirement that TBI submit any additional documentation as a condition of making a payment draw. See Affidavit of James E. Alonzo ("Alonzo Affidavit") at ¶5 and Exhibit B annexed thereto. Had the parties to the Letter of Credit wished to make payment contingent upon TBI's submission to Chase of additional documents -- such as the SGS laboratory report which the Grain Board of Iraq ("GBI") is required to obtain in order to make a claim under the Performance Bond -- they could and would have incorporated such requirements in the Letter of Credit's terms.[1]

TBI did in fact comply with the Letter of Credit's terms by submitting an authenticated Swift notice to Chase, see Alonzo Affidavit at ¶8 and Exhibit C attached thereto, and Chase's obligation to pay TBI was accordingly triggered. Given the terms of the Letter of Credit, Chase would potentially face liability to TBI if Chase sought to make honoring TBI's payment draw request contingent upon documentary requirements or other conditions beyond the authenticated Swift notice required by the Letter of Credit itself.

In short, letters of credit, at least in the first instance, must be strictly enforced according to their terms, and here the terms of the Letter of Credit were satisfied.[2]

---

[1] While the Grain Bank of Iraq ("GBI") is required under the terms of the Performance Bond to submit an SGS laboratory report to TBI in order to make a claim, the Letter of Credit contains no requirement that TBI then forward the SGS laboratory report to Chase as a condition of making a payment draw.

[2] In this regard, the Court should firmly reject any attempt by ADM to argue that Chase somehow had an obligation to independently investigate circumstances surrounding the claim GBI made under the Performance Bond or GBI's receipt of rice shipments in Iraq. Under well-settled New York law, letters of credit may not be construed so as to impose so-called "non-documentary conditions" to payment -- i.e. conditions which would require the issuing bank to look beyond the facial validity of documents presented by the beneficiary and investigate alleged non-compliance with the terms of the underlying transaction. See Chase's February 17th Memorandum of Law at pages 5-6 and cases cited therein. See also Continental Grain Company v. Meridien International Bank, Limited,

1089959_1

ADM's chief argument on this motion is that irrespective of whether TBI facially complied with the terms of the Letter of Credit, payment should still be enjoined under the fraud exception to letter of credit enforcement. To that end, ADM presented testimony and documentary evidence at the February 18 Hearing concerning GBI's alleged non-compliance with the terms of the Performance Bond and its contract with GBI for the purchase of rice.[3]

Not being a party to either transaction, Chase does not take a position as to whether the evidence which ADM presented at the February 18 Hearing is ultimately sufficient to warrant invocation of the narrowly construed fraud exception to letter of credit enforcement, which requires a showing that the alleged fraud be so pervasive as to vitiate the transaction at issue. See Chase's Moving Memorandum of Law at pages 6-7 and cases cited therein. See also Banque Worms, New York Branch v. Banque Commercial Privee, 679 F.Supp. 1173 (S.D.N.Y. 1988) ("[i]nquiry into collateral contracts under the doctrine of fraud in the transaction would eviscerate the commercial utility of the letter of credit by increasing the potential for litigation and judicial interference.") aff'd 849 F.2d 787 (2nd Cir. 1988).

Whether this rigorous standard is met here is ultimately for the Court to decide based upon the evidence ADM submitted at the February 18 Hearing. Chase, of course, stands ready to abide by the Court's ruling.

---

894 F.Supp. 654, 664 (1995) (purported non-documentary conditions do not relieve an issuing bank of its obligation to pay if the beneficiary presents the documents specified in the letter of credit).

Were the law otherwise, banks would be faced with an extraordinarily onerous investigative burden (which would be all but impossible to effectively discharge in most instances) and the utility, reliability and efficacy of letters of credit in international business transactions would be substantially vitiated.

[3] Chase notes that the evidence presented by ADM at the February 18 Hearing -- which largely pertained to alleged fraud by GBI and not to alleged fraud by TBI -- further points up the importance of TBI's participation in this action as a party defendant. Given that it is TBI, as the beneficiary of the Letter of Credit, which will incur the direct loss in the event ADM prevails in this action, TBI's participation is necessary to a full and fair resolution of this matter. See Chase's February 17 Memorandum at pages 10-11 and cases cited therein.

Dated: February 23, 2011
      New York, New York

                             SATTERLEE STEPHENS BURKE & BURKE LLP

                             _____
                             James J. Coster
                             Alun W. Griffiths
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*
230 Park Avenue
Suite 1130
New York, NY 10169
212-818-9200

4

1089959_1