Christopher H. Dillon
Keith W. Heard
Michael J. Walsh
Burke & Parsons
100 Park Avenue
New York, NY  10017-5533
Tel:  (212) 354-3817
Fax:  (212) 221-1432

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ARCHER DANIELS MIDLAND COMPANY and ADM RICE, INC.,** | **11 Civ. 0988 (JSR)** |
| **Plaintiffs,** | |
| **v.** | |
| **JPMORGAN CHASE BANK, N.A.,** | **ECF Case** |
| **Defendant.** | |

**PLAINTIFFS' POST-HEARING MEMORANDUM
IN FURTHER SUPPORT OF THEIR APPLICATION
FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

POINT I
      PLAINTIFFS WILL SUFFER IRREPARABLE HARM
      IF A PRELIMINARY INJUNCTION IS NOT ISSUED. ...............................................1

POINT II
      THERE IS A CLEAR LIKELIHOOD THAT
      PLAINTIFFS WILL SUCCEED ON THE MERITS. ....................................................3

  A.   The Fraud and Forgery Exception to Letter of Credit Payment.........................3

  B.   The Strong Evidence of Fraud in this Case.........................................................8

POINT III
      NEITHER THE CASE LAW CITED BY JPMC NOR THE TEXT
      OF RULE 19 SUPPORT FINDING TBI TO BE A NECESSARY,
      MUCH LESS AN INDISPENSABLE, PARTY..........................................................13

  A.   The Authorities Cited by JPMC Are Inapposite
      and the Ninth Circuit Has Determined a Beneficiary
      of a Letter of Credit Is not a Necessary Party under Rule 19. .........................14

  B.   The Text of Rule 19(a) Does Not Support
      an Argument that TBI Is a Necessary Party. ....................................................15

  C.   Even if TBI *Were* a Necessary Party, It is not
      Indispensable and the Requested Preliminary
      Injunction Should Be Granted in its Absence. .................................................17

CONCLUSION ...........................................................................................................20

**TABLE OF AUTHORITIES**

## Cases

*3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739 (2d Cir. 1999) ..................................... 5

*APV Baker, Inc. v. Harris Trust & Sav. Bank*, 761 F.Supp. 1293 (W.D.Mich. 1991)............ 8

*Canadian Overseas Ores Limited v. Compania de Acero del Pacifico S.A.*, 528 F. Supp. 1337 (S.D.N.Y. 1982), *aff'd.*, 727 F.2d 274 (2d Cir. 1984) .................................................... 2

*Continental Grain Co. v. Meridien Intern. Bank, Ltd.*, 894 F.Supp. 654 (S.D.N.Y. 1995)..... 4

*Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690 (2d Cir. 1980) .............................. 14, 15

*Dynamics Corp. of America v. Citizens and Southern Nat. Bank*, 356 F.Supp. 991 (N.D.Ga. 1973) ....................................................................................................................................... 6

*First Commercial Bank v. Gotham Originals, Inc.*, 64 N.Y.2d 287, 475 N.E.2d 1255 (1985).............................................................................. 4

*Hendricks v. Bank of America,* 408 F.3d 1127 (9th Cir. 2005) ................................... 15, 17

*KMW Intn'l v. Chase Manhattan Bank, N.A.*, 606 F.2d 10 (2d Cir. 1979) ........................ 14

*Menendez Rodriguez v. Pan American Life Ins. Co.*, 311 F.2d 429 (1962), *vacated on other grounds*, 376 U.S. 779 (1964) .................................................................................... 1

*Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, 2004 WL 2199547 at *3, (S.D.N.Y. 2004) ........................................................................................................ 5

*Ping He (Hai Nam) Co. Ltd. v. NonFerrous Metals (U.S.A.) Inc.*, 22 F.Supp.2d 94 (S.D.N.Y. 1998) ....................................................................................................................................... 3

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), *reh'g denied*, 455 U.S. 928 (1982)......... 1

*Rockwell Intern. Systems, Inc. v. Citibank, N.A.*, 719 F.2d 583 (2d Cir. 1983).................... 6

*Sablic v. Armada Shipping APS*, 973 F.Supp. 745 (S.D.Tex. 1997) ...................................... 1

*Sangeorzan v. Yangming Marine Transport Corp.*, 951 F. Supp. 650 (S.D. Tex. 1997)....... 2

*Semetex Corp. v. UBAF Arab American Bank*, 853 F.Supp. 759 (S.D.N.Y. 1994) .............................................................................. 4, 5, 7

*Viacom Intn'l v. Kearney*, 212 F.3d 721 (2d Cir. 2000)................................................. 15, 17

*Weizmann Institute of Science v. Neschis*,
229 F. Supp. 2d 234 (S.D.N.Y. 2002) ......................................................... 14, 15

**Statutes**

N.Y. U.C.C. Law § 5-109 (McKinney 2000) ................................................ passim

N.Y. U.C.C. Law § 5-109(b) (McKinney 2000) ...................................................... 3

**Other Authorities**

C.A. Wright, A.R. Miller, M.K. Kane, 7 *Federal Practice & Procedure: Civil* §1607 (3d ed. 2010) ................................................................................................................ 17

**Rules**

Fed.R.Civ.P. 19 .......................................................................................... 13, 17

Fed.R.Civ.P. 19(a) .................................................................................. 14, 16, 17

Fed.R.Civ.P. 19(a)(1)(A) ............................................................................. 15, 16

Fed.R.Civ.P. 19(a)(1)(B) ......................................................................... 15, 16, 17

Fed.R.Civ.P. 19(b) .................................................................................. 14, 17, 19

Fed.R.Civ.P. 19(b)(2)(b) .................................................................................... 18

Fed.R.Civ.P. 19(b)(4) ........................................................................................ 19

**POINT I**

**PLAINTIFFS WILL SUFFER IRREPARABLE HARM
IF A PRELIMINARY INJUNCTION IS NOT ISSUED.**

During the hearing on February 18th, the Court expressed concern about the wisdom and feasibility of requiring plaintiffs to pursue the Trade Bank of Iraq ("TBI"), a governmental entity, in Iraq in the event a preliminary injunction is not granted and defendant JPMorgan Chase Bank ("JPMC") pays out under the letter of credit.[1]  Plaintiffs contend that a lawsuit against TBI in Iraq would be fruitless, depriving them of an adequate remedy at law and supporting their contention that they will indeed suffer irreparable harm if a preliminary injunction is not issued.

The Supreme Court has observed that "… [w]here the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative…"  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981), *reh'g denied*, 455 U.S. 928 (1982).  "[A]n alternate forum is inadequate if … the plaintiff demonstrates significant legal or political obstacles to conducting the litigation in the alternative forum."  *Mercier v. Sheraton International, Inc*., 981 F.2d 1345, 1350 (1st Cir. 1992), citing *Menendez Rodriguez v. Pan American Life Ins. Co*., 311 F.2d 429 (1962), *vacated on other grounds*, 376 U.S. 779 (1964).  *See also, Sablic v. Armada Shipping APS*, 973 F.Supp. 745, 748 (S.D.Tex. 1997) (regarding war-torn Croatia as an inadequate forum, given the political and military instability of the region and the

---

[1]  Referring to Mr. Bonnesen's direct testimony at the hearing, the Court stated that "[t]he main point he made was that the chances of successfully suing an entity of Iraq in Iraq is about zero. Until I hear cross-examination, I'm going to assume that's common sense."  Transcript at p. 29, lines 8-11 (hereinafter, references to the Hearing Transcript will be shown as "Tr.", followed by the page number, a colon and the relevant line or lines).

likely backlog of cases that would delay adjudication of the case before the Court, stating that "justice delayed is often justice denied").

Due process concerns and the difficulty of having a fair trial have also rendered an alternate forum inadequate where a party to the litigation is either partially owned by or affiliated with the relevant foreign government. *See*, *Sangeorzan v. Yangming Marine Transport Corp.*, 951 F. Supp. 650, 653 – 54 (S.D. Tex. 1997) (ability of plaintiff to sue and/or to retain local counsel questionable where defendant is forty-eight percent owned by Taiwanese government, rendering forum inadequate); *Canadian Overseas Ores Limited v. Compania de Acero del Pacifico S.A.*, 528 F. Supp. 1337, 1342 (S.D.N.Y. 1982), *aff'd.*, 727 F.2d 274 (2d Cir. 1984) (rejecting argument that despite the ruling military junta, Chilean judiciary remains independent where defendant is a state owned-corporation and the likelihood of a fair trial is questionable).

Sabah Al-Mukhtar, an Iraqi lawyer familiar with conditions in the country, has provided a declaration (which the Court accepted at the February 18th hearing) in which he described the near desperate situation there, including "an almost total collapse of the judicial system" (para. 7), which lacks sufficient trained judges and is overwhelmed with cases (paras. 7-8). However, "[t]he biggest problem at present is the unprecedented corruption" (para. 10).  He concludes that "it is my considered opinion that ADM Rice Inc. will not be able to get a fair hearing in an Iraqi court because of these circumstances, secondly it is fighting the TBI and/or GBI and finally it is 'foreign'" (para. 13).

**POINT II**

**THERE IS A CLEAR LIKELIHOOD THAT
PLAINTIFFS WILL SUCCEED ON THE MERITS.**

**A.  The Fraud and Forgery Exception to Letter of Credit Payment.**

The principle that payment under a letter of credit can be enjoined to prevent fraud

existed at common law and has been codified in the Uniform Commercial Code.  Specifically,

section 5-109 of the UCC, entitled "Fraud and forgery", provides that "[i]f an applicant claims

that ... honor of the presentation would facilitate a material fraud by the beneficiary on the

issuer or applicant, a court of competent jurisdiction may temporarily or permanently enjoin

the issuer from honoring a presentation."  N.Y.U.C.C. § 5-109(b)

JPMC erroneously contends that plaintiff is not entitled to a preliminary injunction on

the basis of the "independence principle."  However, the "independence principle" clearly does

not foreclose plaintiff's application for injunctive relief in this action.  In that regard, this Court

wrote in *Ping He (Hai Nam) Co. Ltd. v. NonFerrous Metals (U.S.A.) Inc.*, 22 F.Supp.2d 94, 124

(S.D.N.Y. 1998), as follows:

> The law is well settled that a bank is not legally obligated to pay a
> beneficiary under a standby letter of credit when the beneficiary
> submits a fraudulent demand for payment.  *See Recon/Optical, Inc. v.
> Government of Israel,* 816 F.2d 854, 858 (2d Cir.1987) ("'fraud in the
> transaction' doctrine is an exception to the general rule that a letter of
> credit is independent of the underlying obligation it secures") (citation
> omitted); *Rockwell Int'l Systems, Inc. v. Citibank, N.A.,* 719 F.2d 583,
> 588-89 (2d Cir.1983) (a bank's obligation under a letter of credit does
> not extend to protect a party that seeks to "'runs off with [the]
> plaintiff's money on a pro forma declaration which has absolutely no
> basis in fact' ") (quoting *Dynamics Corp. of America v. Citizens &
> Southern Nat'l Bank,* 356 F.Supp. 991, 999 (N.D.Ga.1973)).

Also, in *Semetex Corp. v. UBAF Arab American Bank*, 853 F.Supp. 759, 773 (S.D.N.Y. 1994), a case on which JPMC specifically relies, the Court wrote as follows:

> Fraud provides a well-established exception to the rule that banks must pay a beneficiary under a letter of credit when documents conforming on their face to the terms of the letter of credit are presented.  *See Rockwell Int'l Systems, Inc. v. Citibank, N.A.,* 719 F.2d 583 (2d Cir.1983); *KMW Int'l v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, (2d Cir.1979) [other citations omitted].

The existence of a fraud exception to the "independence principle" is also apparent from some of the other cases on which JPMC relies.  Thus, in *Continental Grain Co. v. Meridien Intern. Bank, Ltd.*, 894 F.Supp. 654, 660 (S.D.N.Y. 1995), the Court acknowledged the "independence principle" but also says that "the defense of fraud in the transaction is available to a bank issuing a letter of credit."  Likewise, in *First Commercial Bank v. Gotham Originals, Inc.*, 64 N.Y.2d 287, 295, 475 N.E.2d 1255 (1985), the New York Court of Appeals wrote as follows:

> A limited exception to this rule of independence is provided in section 5-114 of the Code (*see also, Sztejn v. Schroder Banking Corp.,* 177 Misc. 719, 31 N.Y.S.2d 631).  Under the general rule the issuer must honor the draft when the documents presented comply with the terms of the letter of credit (Uniform Commercial Code §5-114[1]).  But *when a required document* does not conform to the necessary warranties or *is forged or fraudulent or there is fraud in the transaction, an issuer acting in good faith may, but is not required to, refuse to honor a draft under a letter of credit when the documents presented appear on their face to comply with the terms of the letter of credit.  Further than that, a customer may also enjoin an issuer from honoring such a draft if the issuer fails to do so on its own* ( Uniform Commercial Code § 5-114[2][b]; *see, United Bank v. Cambridge Sporting Goods Corp.,* 41 N.Y.2d 254, 259, 392 N.Y.S.2d 265, 360 N.E.2d 943, *supra;* Harfield, Practice Commentary, McKinney's Cons.Laws of N.Y., Book 62 1/2, Uniform Commercial Code § 5-114, pp. 686-688).  [Emphasis added.]

JPMC apparently contends that the instant letter of credit's incorporation of the International Chamber of Commerce's Uniform Customs and Practice for Documentary Credits, 2007 revision, publication number 600 ("the UCP 600")[2], displaces the fraud exception to the "independence principle" found in New York common law and in UCC §5-109.  However, that is clearly not the case.

Numerous cases make the point that the fraud exception prevails over incorporation of the UCP in a letter of credit.  In *Recon/Optical, Inc. v. Government of Israel*, 816 F.2d 854, 858 n. 4 (2d Cir. 1987), the Court of Appeals wrote as follows:

> The letter of credit is by its terms subject to the Uniform Customs and Practice for Documentary Credits ("UCP").  Although the UCP does not explicitly provide for a "fraud in the transaction" defense, our cases have recognized that New York law makes this defense available under the UCP.  *See Rockwell Int'l Systems, Inc. v. Citibank, N.A.,* 719 F.2d 583, 588 (2d Cir.1983); *KMW Int'l v. Chase Manhattan Bank, N.A.,* 606 F.2d 10, 15 n. 3 (2d Cir.1979) (citing *United Bank Ltd. v. Cambridge Sporting Goods Corp.,* 41 N.Y.2d 254, 258 n. 2, 392 N.Y.S.2d 265, 269 n. 2, 360 N.E.2d 943, 947 n. 2 (1976)).

*Accord:  3Com Corp. v. Banco do Brasil, S.A.*, 171 F.3d 739, 747 (2d Cir. 1999) ("Although the UCP does not explicitly provide a 'fraud in the transaction' defense, New York law makes the defense available to issuers of letters of credit that incorporate the UCP."); *Northrop Grumman Overseas Serv. Corp. v. Banco Wiese Sudameries*, 2004 WL 2199547 at *3, n. 6 (S.D.N.Y. 2004) (" Article 5 of the U.C.C. is inapplicable to letters of credit which are subject to the UCP [but] New York courts have held that the defense of 'fraud in the transaction' under the U.C.C. still applies to letters of credit subject to the UCP.").

---

[2]  As noted in *Semetex Corp. v. UBAF Arab American Bank*, 853 F.Supp. 759, 769 (S.D.N.Y. 1994), "[t]he UCP is not legislation or a treaty, but a compilation of internationally accepted commercial practices, which may be incorporated into the private law of a contract between parties.  *Alaska Textile Co. v. Chase Manhattan Bank, N.A.,* 982 F.2d 813, 816-17 (2d Cir.1992)."

It is also abundantly clear that the fraud exception is not as narrow as JPMC argues but is indeed broad enough to encompass the conduct at issue in this action.  In *Rockwell Intern. Systems, Inc. v. Citibank, N.A.*, 719 F.2d 583, 588-89 (2d Cir. 1983), a case in which the Court of Appeals affirmed a grant of injunctive relief on the basis of the fraud exception, the Second Circuit wrote as follows:

> The "fraud in the transaction" defense marks the limit of the generally accepted principle that a letter of credit is independent of whatever obligation it secures.  No bright line separates the rule from the exception, to be sure, but we agree with Rockwell that *"fraud" embraces more than mere forgery of documents supporting a call*.  *Cf. United Bank Ltd. v. Cambridge Sporting Goods Corp.,* 41 N.Y.2d at 260 & n. 5, 392 N.Y.S.2d at 271 & n. 5, 360 N.E.2d at 949 & n. 5 ("fraud in a required document" rejected in favor of "fraud in the transaction" by drafters of U.C.C. § 5-114(2)).  *The logic of the fraud exception necessarily entails looking beyond supporting documents*, and this renders Tejarat's argument that the letters provide for unconditional payment unpersuasive, if not irrelevant.  In this case, as in the leading case of *Sztejn v. J. Henry Schroder Banking Corp.,* 177 Misc. 719, 31 N.Y.S.2d 631 (Sup.Ct.1941), we must look to the circumstances surrounding the transaction and the call to determine whether Tejarat's call amounted to an "outright fraudulent practice."  *United Bank Ltd.,* 41 N.Y.2d at 261, 392 N.Y.S.2d at 271, 360 N.E.2d at 949. [Emphasis added.]

Likewise, in *Dynamics Corp. of America v. Citizens and Southern Nat. Bank*, 356 F.Supp. 991, 995-96 (N.D.Ga. 1973), another case in which injunctive relief was granted, the Court wrote as follows:

> Long-standing decisional law, which has been codified in the Uniform Commercial Code, establishes that the sole interest of the bank in a letter of credit transaction is in the documents to be presented, unless the parties agree otherwise.  Those documents must be exactly as stated in the letter of credit and the bank is obligated to pay only if the beneficiary has strictly complied with the terms of the letter.  If, however, presentment and demand is made by the beneficiary or his agent and there are no innocent third-party holders in due course

> involved, and prior to payment the bank is notified by its customer of
> fraud, forgery, or other defect not apparent on the face of the
> documents presented, the bank has the option of honoring or not
> honoring the demand, although a court of appropriate jurisdiction
> may enjoin honor in such a circumstance.  Sztejn v. J. Henry Schroder
> Banking Corp., 177 Misc. 719, 31 N.Y.S.2d 631 (Sup.Ct.1941); Uniform
> Commercial Code § 5-114(2)(b).

The cases on which JPMC relies in opposition to plaintiff's application for injunctive relief are all distinguishable.  In *Recon/Optical, Inc. v. Government of Israel*, 816 F.2d 854 (2d Cir. 1987), the Second Circuit agreed with the District Court that, unlike the instant case, there was no evidence of fraud.  Thus, the Court of Appeals wrote that "there is no evidence that Israel has acted in bad faith or impeded Recon's continued performance.  Far from constituting fraud, a drawdown by Israel under the circumstances is entirely consistent with the parties' contractual intent."  *Id.* at 858.

In *Semetex Corp. v. UBAF Arab American Bank*, 853 F.Supp. 759 (S.D.N.Y. 1994), the confirming bank asserted applicability of the fraud exception late in the game to avoid paying out under a letter of credit for a shipment to Iraq that was blocked by that country's invasion of Kuwait in August 1990.  The Court noted that the bank gave no indication it thought the relevant transportation documents were fraudulent at the time of their presentation and, indeed, subsequently provided a letter stating that "plaintiffs' August 1, 1990 'drawing request and ... documentation satisfy the terms of the Letter of Credit'."  *Id.* at 766.  The Court pointed out that "UBAF's actions . . . are strongly at odds with an intention to stand upon its right to assert a fraud defense," observing that "[i[t was not until after this lawsuit was filed that UBAF first raised the issue of fraud."  *Id.* at 773.  In the instant case, plaintiff ADM Rice warned defendant that a drawdown on the letter of credit would be wrongful before this action was even filed.  *See* Exh. H to Bonnesen declaration.

- 7 -

Finally, in *APV Baker, Inc. v. Harris Trust & Sav. Bank*, 761 F.Supp. 1293 (W.D.Mich. 1991), a case from outside the Second Circuit, the Court adopted a view of the fraud exception that is substantially narrower than the one followed in this Circuit.  Indeed, the District Court there wrote that "the court concludes that section 5-114's fraud exception is limited to fraud in the credit transaction except when extraordinary circumstances vitiate the independent function of the letter of credit altogether."  *Id.* at 1300.  The Court wrote further that "[t]o the extent this holding conflicts with decisions in other circuits, I respectfully disagree."  *Id.*  As a matter of equity, the Court in *Baker v. Harris* was also concerned that, unlike the situation in this case, plaintiff itself had provided several extensions of the letter of credit and it was during a period covered by one of the extensions that the Iranian bank made its demand for payment back in 1981.

Thus, the cases on which JPMC relies in opposition to plaintiffs' reliance on the fraud exception are either factually distinguishable or involve situations where the judges simply decided to follow a rule at variance with that to which the Court of Appeals for this circuit adheres.  Accordingly, none of these cases support denial of plaintiffs' application for injunctive relief in this action.

**B.  The Strong Evidence of Fraud in this Case.**

When plaintiffs filed this action, which was done quickly to present a draw down on the letter of credit, they understood that SGS had not issued a "laboratory report specifically certifying that the quality of the purchased commodity does not meet the contractual specifications," as required by the performance bond.  Bonnesen decl., Exh. D.  When the action was filed, the only documentary evidence of the non-existence of an adverse SGS laboratory report was an email exchange between Ashish Mathur, an ADM employee, and Amjad

- 8 -

Majdoubeh, the Branch Manager of SGS Gulf's Iraqi Branch.  *Id.* at Exh. I.  At the hearing on

February 18th, however, plaintiffs were able to place substantial evidence on this issue before

the Court.

      Christian Bonnesen, the president of ADM Rice, explained that, although the company

has been required to post performance bonds, as a condition of selling rice to GBI, since the

transactions began in 2005, there has never been a demand against one of the bonds until the

current situation.  Rather, any claims GBI may have had with respect to rice that ADM Rice

delivered to Iraq were handled commercially between the parties, with GBI submitting

documented claims to ADM Rice and the latter paying them where it was appropriate to do so.

Tr. at 14:16 – 15:14.

      The current situation marks the first time since ADM Rice began selling rice to Iraq that

there has been a demand against a performance bond.  Strangely, the demand that TBI

allegedly received was not presaged by any presentation of a claim to ADM Rice or other

warning from GBI.  Tr. at 15:16-22.  The demand occurred in a commercial vacuum, although

perhaps not in a political vacuum, as the decision to draw on the performance bond was

apparently made by the outgoing Minister of Trade, a Sunni, in advance of the assumption of

that ministerial position by the new appointee, a Kurd.  Tr. at 3:25 – 4:3.

      In point of fact, the parties do not know what, if any, documents were presented to TBI

in support of a demand for payment under the performance bond.  In its Swift notice of

February 10, 2011, TBI simply stated that it had received a "TENABLE" claim – whatever that

means – that was (allegedly) "IN ACCORDANCE WITH THE TERMS OF THE PERFORMANCE

BOND."  Alonzo decl., Exh. C.

ADM Rice has shipped three shipments of rice to Iraq under the current sales contract, which is no. MOT/GB/R5/4/2010 dated September 6, 2010.  Bonnesen decl., Exh. F.  The rice transported onboard the first vessel, the M/V CAPTAIN HARRY, has been delivered, Tr. at 24:6-8 and 51:10-11, whereas the other two shipments are still on vessels en route to Iraq.  Tr. at 25:14-15.

Employees of SGS, a worldwide commodity inspection, sampling and testing service, Tr. at 43:16-21, examined the rice shipped on CAPTAIN HARRY at several points during transit.  Mr. Peter Legemaate, Business Manager for SGS' U.S. Agricultural Trade Services division, testified that SGS employees had "[c]omplete supervision during loading in the U.S." of rice on CAPTAIN HARRY, Tr. at 44:11-12, after which they issued a number of certificates, including Certificate No. 10112404AD.

This Certificate, marked plaintiffs' Exhibit 1 at the hearing, recites that "upon instructions received our inspector has supervised the loading of a parcel described as U.S. White Long Grain Well Milled Rice while loading Midstream Mississippi [River] on the elevator AMERICA, Darrow, Louisiana, USA into vessel M/V CAPTAIN HARRY into Hold nos. 1, 2, 3 and 5." Additionally, "[l]oading and weighing was from barge to vessel via floating elevator to vessel under our constant supervision into Holds 1, 2, 3 and 5."  Plaintiffs' Exh. 1, p. 1.  The Certificate continues as follows:

> **Sampling:**  Representative sampling of the cargo was performed at regular intervals throughout entire loading while loading from elevator into vessel.
> A composite sample proportionally mixed was submitted for analysis in a reputable laboratory and we certify the average actual analysis results as follows:
>
> [tables with laboratory results omitted]

> Based upon contractual specs presented and limited to results
> obtained as per above testing, we can confirm the following:
>
> "CONFIRMING GOODS TO CONTRACTUAL SPECIFICATIONS AT
> SHIPMENT".

Plaintiffs' Exh. 1, pp. 1-2.

Both Mr. Bonnesen and Mr. Legemaate explained that standard procedure for ADM

Rice's shipments to Iraq calls for the loaded vessels to stop at the Outer Anchorage in Fujairah,

U.A.E. for cargo sampling and inspection prior to discharge in Iraq.  Tr. at 18:6-12 and 48:2-17.

The CAPTAIN HARRY called at Fujairah on January 5-6, 2011, at which time an SGS surveyor

"attended . . . and performed sampling" on the cargo.  Plaintiff's Exh. 2, p. 1.

Mr. Legemaate testified that the hatch covers which permit access to the vessel's cargo

holds were secured with seals when the ship finished loading in Louisiana.  The SGS Inspection

Report from Fujairah, No. J0229A-DB10, reflects that these seals were checked before the

CAPTAIN HARRY's hatch covers were opened at the Outer Anchorage there on January 1, 2011.

*Id.* at pp. 1-2.  Samples of the rice in the vessel's holds were then drawn.  According to the

Inspection Report, "[s]ampling and sample preparation was performed in presence of Ms. Iraqi

Grain Board, jointly with Ms. Survey & Inspection Services (SIS), vessels chief officer and SGS

surveyors." *Id.* at p. 2.  As a result of the cargo sampling and concomitant visual inspection of

the rice, the SGS Inspection Report concludes that "[c]argo was found in good condition."  *Id.* at

p. 3.

The CAPTAIN HARRY then proceeded to Umm Qasr, Iraq, where it arrived on January 8,

2011.  Plaintiffs' Exh. 3, p. 1.  Upon arrival, "[r]esampling [of the cargo] was performed at

anchorage at Umm-Qasser pilot station area on 18/1/2011 at 1630 hrs." *Id.*  As Mr. Legemaate

explained, SGS personnel attended on board the CAPTAIN HARRY during cargo discharge at Umm Qasr.  Tr. at 50:14-19.  The report of this attendance, prepared and issued by the Iraqi Branch of SGS Gulf, confirms that "our inspectors had supervised the discharge until completion on 14/02/2011."  Plaintiffs' Exh. 3, p. 1.  The report contains no indication that the condition of the rice cargo on the CAPTAIN HARRY was any different at Umm Qasr than it had been upon loading in Louisiana and upon inspection and sampling in Fujairah.  Other than a spillage of 12 metric tons of cargo that remained on the vessel's deck, the SGS report from Iraq contains no indication that the cargo was damaged or off-spec.[3]

After the CAPTAIN HARRY completed discharging in Iraq on February 14th, Mr. Legemaate conducted an investigation to determine if SGS had issued a "laboratory report specifically certifying that the quality of the purchased commodity does not meet the contractual specifications."  Tr. 53:8-15.  He checked SGS' worldwide electronic system for any such report, contacted "Technical Governance" at SGS' world headquarters in Geneva, Switzerland and, finally, spoke with Mr. Amjad Majdoubeh, SGS's Branch Manager in Iraq. Johny Boerjan, the head of Technical Governance for agriculture, reported that his department did not have any adverse cargo quality reports for the CAPTAIN HARRY from Iraq,  and Mr. Majdoubeh advised Mr. Legemaate that "none such certificates were issued."  Tr. at 56:14-21 and 55:14-21.  Mr. Legemaate also explained that Mr. Majdoubeh gave no indication that an adverse quality report was going to be issued with respect to the rice that had been discharged from the CAPTAIN HARRY.  Concluding, Mr. Legemaate testified that SGS personnel in Iraq "are

---

[3]  At a contract price of $549.75 per metric ton, Bonnesen decl., Exh. F, p. 2, the value of the 12 metric tons that were spilled on the vessel amounted to only $6,597.00, far short of the amount TBI seeks under the letter of credit.  Clearly, there is no relationship between this relatively minor spillage and the attempted draw down.

in constant attendance of the vessel.  They are in constant contact with ADM, and there were

no signs that there was anything wrong with the product."  Tr. at 57:12-14.

Given this evidence, it is clear there is no actual or authentic SGS laboratory report

indicating that the rice on the CAPTAIN HARRY did not meet the contractual specifications.

Since the other two vessels have not yet reached Iraq, there could not be such a report with

respect to their cargoes either.  Even assuming *arguendo* that JPMC received a facially

compliant demand for payment under the letter of credit, JPMC should be preliminarily

enjoined from honoring the demand since, in the language of U.C.C. § 5-109, the "applicant

claims that a required document is forged or materially fraudulent or that honor of the

presentation would facilitate a material fraud by the beneficiary on the issuer or applicant."

**POINT III**

**NEITHER THE CASE LAW CITED BY JPMC NOR THE TEXT OF RULE 19 SUPPORT FINDING TBI TO BE A NECESSARY, MUCH LESS AN INDISPENSABLE, PARTY.**

Neither of the two cases JPMC cites for the proposition that TBI is a "necessary party"

under Rule 19 of the Federal Rules of Civil Procedure supports its claim because both are

factually distinguishable.  JPMC has not cited a single decision in which an applicant for a letter

of credit, claiming the "fraud in the transaction" exception to the independence principle, has

been denied opportunity to assert the exception in a suit against the issuing bank due to failure

to join the beneficiary as a necessary party under Rule 19.  Moreover, U.C.C. §5-109, and the

official comments thereto, do not specifically require that the beneficiary of the letter of credit

must be named as a party in any suit to enjoin the issuer from making payment on the letter of

credit.

By contrast, there are cases in which courts have issued injunctions, under the fraud in the transaction exception, where the beneficiary of the letter of credit was not named as a party to the action.[4]  Furthermore, the factors outlined in Fed.R.Civ.P. 19(a), when applied to the facts of this matter, demonstrate that TBI is not a "person required to be joined if feasible." Finally, even if this Court determines that TBI is a "necessary" party under Rule 19(a), and that TBI cannot be joined -- thereby requiring an analysis under Rule 19(b) of whether in equity and good conscience, the action should proceed or not in TBI's absence -- the factors outlined in Rule 19(b)  demonstrate that the action should nevertheless proceed rather than be dismissed.

### A. The Authorities Cited by JPMC Are Inapposite and the Ninth Circuit Has Determined a Beneficiary of a Letter of Credit Is not a Necessary Party under Rule 19.

The two cases upon which JPMC relies are factually inapposite because neither *Weizmann Institute of Science v. Neschis*, 229 F. Supp. 2d 234 (S.D.N.Y. 2002), nor *Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690 (2d Cir. 1980), involved a letter of credit dispute in which the "fraud in the transaction" exception was asserted to enjoin the issuer from making payment to the beneficiary.  More importantly, *Weizmann* was critically different from this case in that, there, plaintiffs' own Complaints *explicitly sought affirmative relief from the Anturia Foundation*, the absent party found to be "necessary."  229 F. Supp. 2d at 251 (Count I and prayer for relief of plaintiffs' Complaints sought a distribution of 57% of the assets, wherever located, of the Anturia Foundation).  Here, by contrast, ADM and ADM Rice do not seek any

---

[4] *See, e.g.*, *KMW Intn'l v. Chase Manhattan Bank, N.A.*, 606 F.2d 10 (2d Cir. 1979), where the District Court had enjoined Chase from making payment under a letter of credit to Banque Etebarate of Tehran, and the latter was apparently not named as a party to the litigation.  The Second Circuit vacated the injunction -- not on the grounds of failure to name the Iranian bank as an indispensible party -- but on grounds that plaintiff had not demonstrated irreparable injury.

relief against TBI, a party with whom ADM and ADM Rice have no contractual relationship. Instead, the injunctive relief sought by ADM and ADM Rice is requested solely against JPMC.

Similarly, the decision in *Crouse-Hinds Co.* is distinguishable not only because no letter of credit was involved there, but also because Belden, the party found to be "necessary," was *in a contractual relationship with plaintiff, Crouse-Hinds*, pursuant to an "Exchange Agreement," the performance of which defendant and counterclaimant, InterNorth, sought to enjoin Crouse-Hinds from performing. 634 F.2d at 700-701. Here, however, TBI has no contractual relationship with ADM and/or ADM Rice; the remedy is sought solely under the contract with JPMC as issuer.

By contrast, in circumstances factually more akin to those operative here, the Ninth Circuit has held that the foreign beneficiary of a letter of credit was not a "necessary" party in an action commenced by the applicant to enjoin the issuing bank from honoring a draw thereon. *Hendricks v. Bank of America,* 408 F.3d 1127 (9th Cir. 2005). Because of its factual similarity, *Hendricks* is far more persuasive on the issue of whether TBI is a necessary party than either *Weizmann* or *Crouse-Hinds Co.*

**B. The Text of Rule 19(a) Does Not Support an Argument that TBI Is a Necessary Party.**

Rule 19 (a) requires a "threshold determination," *Viacom Intn'l v. Kearney*, 212 F.3d 721, 725 (2d Cir. 2000), that an absent party belongs in the suit. To determine whether joinder of the absent party is "necessary" requires a showing that the requirements set forth in either Rule 19(a)(1)(A) or in Rule 19(a)(1)(B) have been met. These subsections of Rule 19(a) provide as follows:

**(a) Persons Required to be joined if Feasible.**

(1)  **Required Party,**  A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

**(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

**(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

**(i)** as a practical matter impair or impede the person's ability to protect the interest; or

**(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a).

In this case, JPMC has not and cannot establish that TBI satisfies the requirements of either Rule 19(a)(1)(A) or Rule 19(a)(1)(B).  First, this Court *can* accord complete relief between the *existing parties*, ADM/ADM Rice and JPMC, by simply enjoining JPMC from making payment under the letter of credit.  The presence of TBI is not necessary for the Court to grant the requested relief since the injunction is directed only at JPMC.  Fed.R.Civ.P. 19(a)(1)(A).  As noted by the Advisory Committee Note to the 1966 Amendment to Rule 19(a), clause 1 of the amended rule "stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court."  If this Court grants the preliminary injunction without joining TBI as a party, the relief would not be "hollow" because the status quo would be preserved until the merits of the claim under § 5-109 have been determined.

Second, granting ADM and ADM Rice a preliminary injunction would not "as a practical matter impair or impede [TBI's] ability to protect [its] interest" in the letter of credit because the requested relief merely delays payment to TBI and temporarily preserves the proceeds of the letter, pending a final determination of whether the draw down on the letter of credit is fraudulent or would facilitate a material fraud in violation of § 5-109.  Fed.R.Civ.P. 19(a)(1)(B); *see also Hendricks,* 408 F.3d at 136 (preliminary injunction does not impair or impede beneficiary's ability to protect its interest in the letter of credit because the injunction merely preserves the asset, pending a final judgment on the merits in litigation between the applicant and the beneficiary in another forum).

Where, as a threshold matter, TBI cannot be found "necessary" under the provisions of Rule 19(a), this Court need not engage in the second part of the "two-step" Rule 19 test, by which it would determine whether the action should proceed despite TBI's absence or whether the action should be dismissed because TBI is indispensable.  *See, e.g.*, *Viacom Int'l,* 212 F.3d at 724-25 (2d Cir. 2000); *see also* Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, 7 *Federal Practice & Procedure: Civil* §1607 (3d ed. 2010) ("Of course, if the absentee is not found to be a person whose joinder is desirable under Rule 19(a), the court need not engage in the Rule 19(b) analysis.").

**C.  Even if TBI *Were* a Necessary Party, It is not Indispensable and the Requested Preliminary Injunction Should Be Granted in its Absence.**

If a party is found to be necessary under Rule 19(a), the Court must then (and only then), turn to an analysis under Rule 19(b) which provides:

**(b) When Joinder is Not Feasible.**  If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:

**(1)** the extent to which a judgment rendered in the person's absence might be prejudicial to that person or the existing parties;

**(2)** the extent to which any prejudice could be lessened or avoided by:

   **(A)** protective provisions in the judgment;

   **(B)** shaping the relief; or

   **(C)** other measures;

**(3)** whether a judgment rendered in the person's absence would be adequate; and

**(4)** whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

Here, however, consideration of all the factors set forth in Rule 19(b) weigh in favor of granting the preliminary injunction and continuing the suit as between JPMC and ADM/ADM Rice without joinder of TBI.  First, granting a preliminary injunction will not be prejudicial to TBI because there will only be a temporary delay in payment on the letter of credit until a final determination can be made on the merits of the claims under § 5-109.  Moreover, where JPMC is simply a stakeholder, granting the preliminary injunction will not be significantly prejudicial to its rights as the other existing party to the suit.  Second, even if *arguendo* TBI would be prejudiced by a preliminary injunction granted in its absence, any such prejudice can be lessened or avoided.  This can be accomplished, pursuant to Rule 19(b)(2)(b), by "shaping the

- 18 -

relief" in such a way as to provide protection to TBI.  As noted during the February 18th hearing on the request for preliminary injunction, one simple way to protect TBI would be to extend the March 20th expiration date of the letter of credit, a step ADM Rice is prepared to undertake, provided appropriate safeguards against future fraud can be established.  Tr. at 5:5-13.  This would be an effective way to ensure that TBI's legitimate interests are protected and that the status quo is preserved.  If the letter of credit remains in place, TBI cannot be harmed, except by a payment delay which would be an insignificant amount of interest on the reimbursement of any sum they (doubtfully) paid out to the Development Fund for the account of GBI.[5]  Third, a judgment granting the preliminary injunction would be adequate in TBI's absence insofar as ADM/ADM Rice and JPMC are concerned because it accomplishes the task of preserving the status quo until the merits of the § 5-109 claim can be resolved.  Fourth, ADM/ADM Rice would not likely have an adequate remedy if they are forced to pursue their fraud claims against either TBI or GBI in Iraq.  Tr. at 29:8-11.  If this suit were to be dismissed because TBI is deemed an indispensable party, ADM and ADM Rice would have no adequate remedy in contravention of the interest articulated in Rule 19(b)(4) .

        For all the foregoing reasons, the balancing of interests required by Rule 19(b) demonstrates that TBI is not an indispensable party whose absence requires dismissal of the action.

---

[5]  Of course, in "shaping the relief" to protect the interests of TBI, the Court also has the power to require that a bond be posted to protect TBI from harm, although as this Court noted during the telephonic hearing on February 14th on the application for the temporary restraining order, among companies the size of ADM, bonds or other formal security are not typically required.

**CONCLUSION**

**FOR THE FOREGOING REASONS, PLAINTIFFS RESPECTFULLY REQUEST THAT THIS HONORABLE COURT GRANT A PRELIMINARY INJUNCTION PREVENTING DEFENDANT FROM PAYING OUT UNDER ITS LETTER OF CREDIT TFTS-868801 PENDING FURTHER ORDER OF THE COURT.**

Dated:   New York, NY
         February 23, 2011

                              BURKE & PARSONS
                              Attorneys for Plaintiffs
                              Archer Daniels Midland Company and
                              ADM Rice, Inc.


                              By: /s/  Keith W. Heard
                                   Keith W. Heard
                                   100 Park Avenue
                                   New York NY  10017-5533
                                   (212) 354-3815
                                   heard@burkeparsons.com


9240_0007_S03.DOCX